SOUTH MISSISSIPPI AIRWAYS *et al. v.* CHICAGO & SOUTHERN AIRLINES *et al.*

(In Banc. May 27, 1946.)

[26 So. (2d) 455. No. 36013.]

Reese O. Bickerstaff, of Gulfport, and **John H. Hollo-**
man, of Columbus, for appellants.

Stevens & Stevens, May & Byrd, and Chambers & Trenholm, all of Jackson, and **W. Percy McDonald**, of Memphis, Tenn., for appellees.

Chambers & Trenholm, of Jackson, for appellees.

L. A. Smith, Sr., J., delivered the opinion of the court.

Three separate applications were filed respectively by South Mississippi Airways, Magnolia State Airways and Cox Airways, with the Public Service Commission, seeking certificates of public convenience and necessity for the operation of airlines along certain designated wholly intrastate air routes. Protests were filed by appellees. Without objection, these applications were consolidated for the purpose of consideration by the Public Service Commission. By the protestants, it was variously urged that there is no Mississippi statute conferring authority upon the Commission to issue such certificates to a common carrier by air; that the State law does not give the Commission any authority over airlines, and applicants cannot operate even if such certificate can be and be granted until such operation has been authorized by

the Civil Aeronautics Board created by Congress, Title 49, Sec. 241, U. S. C. A., which applicants had not secured as required by said Act; that similar service is proposed to be rendered by some of said protestants, delayed by war restrictions, which had already previously applied to the United States Civil Aeronautics Board for a certificate of public convenience and necessity, and with which applicants intended to compete; and that the Public Service Commission was without jurisdiction in the premises.

The Public Service Commission, however, heard the applications and protests, and granted the certificates, which, appellees here contend, substantially cover a large portion of the entire State. Appellees, as authorized by statute, appealed to the Circuit Court of the First District of Hinds County, where the order of the Public Service Commission was vacated,—that court holding the Commission was without jurisdiction to grant the certificate sought, and dismissed the applications. The application of Cox Airways seems to have been separately dismissed in the circuit court and they are not appealing. From the judgment of the circuit court, the two appellants here, South Mississippi Airways and Magnolia State Airways, appealed.

Four errors are assigned for our adjudication. They are: (1) The trial court erred in sustaining motion to dismiss the applications; (2) it erred in holding that the Public Service Commission was without jurisdiction to consider them and grant thereon certificates of public necessity and convenience, being in effect, they say, permits or franchises to operate the business of common carriers of passengers, freight, and express in intrastate commerce by air in Mississippi; (3) the trial court erred also in holding the certificates of public necessity and convenience issued appellants by the Commission were void; and (4) that the court erred in holding that protestants had the right to challenge the order of the Commission, from which they appealed to the circuit court,

or that they had such a right as qualified them to appear and contest the applications, since, they say appellees were not, have not been, and could not be injured by the action of the Public Service Commission in awarding appellants the certificates.

Before filing their applications for the certificates, appellants obtained a written opinion from the office of the Attorney General that "the Public Service Commission, which by law has supervision of all common carriers in the State of Mississippi, has the implied authority to issue a certificate of public convenience and necessity to intrastate airlines transporting passengers and property by aircraft, and that such authority is given to the Commission by virtue of Chapter 142 of the Laws of 1938, and particularly Section 3, Subsections (c) and (d). It is true that no act specifically authorizes such to be done, but from the definitions used in the above cited act and the jurisdictions of the Mississippi Public Service Commission, there is an implied authority given it to issue such certificates."

Chapter 142, Laws 1938, may be cited as the "Mississippi Motor Carrier Regulatory Act, 1938," and is now Chapter 4, Title 28, entitled Common Carriers, Code 1942. Section 3, Subsections (c) and (d) of Chapter 142, Laws 1938, are in the Code of 1942, as Section 7634, Subsections (c) and (d), which are the same in the Code as in the Act. They read as follows:

"(c) The term 'highway' means every public highway or place of whatever nature open to the use of the public for purposes of vehicle travel in this State, including the streets and alleys in towns and cities."

"(d) The term 'motor vehicle' means any vehicle, machine, tractor, trailer, or semi-trailer propelled or drawn by mechanical power and used upon the highways in the transportation of passengers or property, but does not include any vehicle, locomotive or car operated exclusively on a rail or rails."

Section 186 of the Constitution of the State of Mississippi provides "The legislature . . . shall enact laws for the supervision of railroads, express, telephone, telegraph, sleeping-car companies, and other common carriers in this state, by commission or otherwise . . ."

Section 7639, Code 1942, requires that a certificate of public convenience and necessity shall be obtained from the Public Service Commission by all common carriers by motor vehicle, as follows: "No common carrier by motor vehicle . . . shall engage in intrastate operation on any highway within the State unless there is in force with respect to such carrier, a certificate of public convenience and necessity issued by the Commission authorizing such operation . . ."

Section 7640 governs the details of applications for such certificates, including information as to "the public highway or highways over which, and the cities, towns or villages between which and the route or routes or the territory within which it proposes to operate"; and "the kind of transportation, whether passenger or property, or both, together with a full and complete description of the character of the vehicle or vehicles to be used . . ."

Appellants argue that air transport companies, such as they are, and some protestants, are common carriers, citing Curtiss-Wright Flying Service, Inc., v. Glose, 3 Cir., 1933, 66 F. (2d) 710, 712; certiorari denied, 290 U. S. 696, 54 S. Ct. 132, 78 L. Ed. 599, in which occurs the following language: "What reason is there why the same principles applicable to land and water should not also be applied to air transportation? Terminal Taxicab Co. v. Kutz, 241 U. S. 252, 36 S. Ct. 583, 60 L. Ed. 984, Ann. Cas. 1916D, 765. All alike perform the same service, viz., transportation. They are competitors for the same class of business. Every passenger carried by airplane means a passenger less for the railroad or steamship. Transportation, as its derivation denotes, is a carrying across, and, whether the carrying be by rail, by water or by air,

the purpose in view and the thing done are identical in result.'' The same conclusion was reached in McCusker v. Curtiss-Wright Flying Service, Inc., 269 Ill. App. 502, quoting the New York Court in 1920, from Anderson v. Fidelity & Casualty Co., 228 N. Y. 475, 127 N. E. 584, 585, 9 A. L. R. 1544: ''To-day, as is practically conceded by counsel for both parties in the instant case, the term 'common carrier' should be applied to the 'jitney bus,' and tomorrow, in a proper case, it may well be that it may be applied to that most recent device for eliminating the fetters of distance, the aeroplane . . . .'' We see no good reason why there cannot be common carriers by the use of airplanes.

It has been decided that an airplane comes within the term "vehicle." United States of America v. One Pitcairn Biplane (D. C.), 11 F. Supp. 24. Appellees, to the contrary, cite Platt v. Erie County Agricultural Society, 164 App. Div. 99, 149 N. Y. S. 520, quoted in part in English v. Miller (Tex. Civ. App.), 43 S. W. (2d) 642, 644, wherein it is said: An airplane has been held not to be a "motor vehicle" within the law relating to the transportation of a motor vehicle, knowing it to have been stolen, in interstate or foreign commerce. In McBoyle v. United States, 283 U. S. 25, 51 S. Ct. 340, 75 L. Ed. 816, the Court said: ''. . . in every day speech 'vehicle' calls up the picture of a thing moving on land.'' However, it also says: ''No doubt etymologically it is possible to use the word to signify a conveyance working on land, water or air . . .''

The appellees do not take issue with appellants that airplanes may be common carriers, and are such under qualifying circumstances. It is their contention here that the question primarily before us for decision is one of the jurisdiction of the Public Service Commission to grant a certificate of public convenience and necessity to transport passengers or freight by aircraft common carriers. They contend that the statutes of this State have not yet taken cognizance of air transportation as common

carriers, and have not extended statutory authority of the Commission to regulate the same, and no such authority was ever granted the Commission by the Legislature. Indeed, this question by the trial court was thus decided, ''and the said question of the jurisdiction of the said Commission having been submitted and argued to the Court, and the Court now being advised of its judgment, is of the opinion and finds that the Mississippi Public Service Commission is, and was at the date of the order entered herein, without jurisdiction to entertain petitions for the granting of, and is and was without jurisdiction to grant, any certificate of convenience and necessity for intrastate operation as a common carrier by air to any person.''

Appellants say this judgment was wrong, that the words ''common carriers'' appear in this chapter twenty-six times, and that, therefore, the Commission had jurisdiction within the provisions of the statutes. They contend that the language is broad enough to include airplanes and their operations, but they cite no authorities, to sustain their contentions, except those to which reference has been made supra, and will be hereafter mentioned.

Appellees, on the contrary, argue that the words ''other common carriers,'' appear usually in conjunction with the word ''railroad,'' and ''any railroad or other common carrier,'' for the evident purpose of not having to repeat the words ''telegraph,'' ''telephone,'' ''express,'' ''sleeping car,'' ''car service associations,'' etc. They also point out that when the Public Service Commission Act of 1938 was adopted, Code 1942, sec. 7688 et seq., airlines were in operation in Mississippi but were not specifically named anywhere in the Act creating the Public Service Commission and defining its powers and duties.

Appellees, to sustain their position that the applicable legislation has not yet conferred jurisdiction on the Public Service Commission to control airplane transportation, cite Section 7533, Code 1942, requiring that any person

navigating any aircraft within this State, carrying a passenger, must have a certificate so authorizing from the proper Federal agency of the Department of Commerce, and such person must have a pilot's license; Section 7534 requiring inspection of planes by the same Federal authority; and Section 7535 providing for revocation of a pilot's license at the discretion of Federal authority. The point is made that such matters are committed to the discretion of Federal and not State authority.

Section 7536 of Title 28 describes aircraft as "any contrivance now known or hereafter invented, used or designed, for navigation of, or flight in the air, which is engaged in carrying passengers or property for hire or reward, or in the furtherance of a business . . ."

All of the preceding sections are in Chapter 1, of Title 28, under the heading, "Aeronautics," and none of the other sections under that heading commit to the Public Service Commission any supervision of any sort of air common carriers. Section 7537 permits counties to acquire airports; and Section 7538 gives the same privilege to municipalities; Section 7539 authorizes joint acquisition by counties and municipalities of airports; Section 7540 provides for bond issues; Section 7541 confers authority on boards of supervisors to clear, grade, condition and enclose aviation fields; Section 7542 authorizes payment from general county funds, and so on.

No act of the Legislature since has been called to our attention, nor have we been able to find any, that alters the statutes under consideration here. Since the Legislature has met several times since the adoption of Chapter 142, Laws 1938, and has also provided and authorized a compilation of statutes now known as Code 1942, in which have been assembled all cognate and kindred statutes affecting common carriers under one title, 28, with the subtitle "common carriers" and with chapters therein dealing with "Aeronautics," "Harbors," "Landings," "Motor Carriers," "Public Service Commission,"

"Railroads," and "Supervision of Common Carriers," it is a reasonable inference that the Legislature has gone only so far, and intended to go no further in dealing with the subject matter. It would seem further that, having dealt with Aeronautics rather extensively, and failed expressly to confer on the Public Service Commission jurisdiction of them as common carriers, we are limited to whether the Legislature has done so impliedly, as contended by appellants; and, if so, whether such power can be conferred by implication.

Appellants say, with some force, "The very fact that the Legislature followed, literally, the language of the Constitution in vesting in the Public Service Commission (originally Railroad Commission) jurisdiction and supervision over railroads, express, telephone, telegraph, sleeping car companies, and other common carriers, in this State, thereafter adding new powers and duties, and changing the name of the original commission from 'Railroad' to 'Public Service' Commission," evidences an intent on the part of the Legislature to confer on the Public Service Commission all the power of the State to control public service air common carriers.

However, the argument is somewhat weakened by the use of certain prepositions in the statutes. For instance, in subsection (d), Section 7634, the term "Motor Vehicle" is referred to as propelled "upon" the highways; and in Section 7639, dealing with issuance of certificates to common carriers, the language is engaged in intrastate operation "on" any highway. And subsection (e), Section 7634, uses this language, "including such motor vehicle operation of carriers *by rail or water*," (Italics ours.) No mention is made of carriers by air. One navigates the air, or through, not on or upon the air, or as the phrase in Section 7536, Code 1942, expresses it, "[makes] a flight in the air."

But appellants say, that the Act defines "highway" as "... *every* public highway *or place of whatever nature* open to the use of the public for purposes of vehicle

travel in this State, including the streets and alleys in towns and cities." They say this language is so broad and comprehensive that it includes travel "on, over or through, i. e., any and every place, way or space capable of being navigated or used for the purpose of public transportation. It is not confined to the highways of the ground, but includes as well the highways of the air." This contention overlooks the color given to the entire definition by its context, and the juxtaposition of the first part with the last phrase, "including the streets and alleys in towns and cities." This view seems supported, furthermore, by Section 7633, expressing the State's public policy, where it is enacted: "It is hereby declared to be the [public] policy of the legislature to regulate motor carriers in the public interest to the end that the safety and welfare of the public *in its use of highways and of transportation agencies by motor vehicle used thereon may be practiced.*" (Italics ours.) Attention is called to the use of the preposition "thereon." In Mississippi Central Railroad Co. v. Alexander, 169 Miss. 620, 152 So. 653, this Court had before it the question whether the statute imposed on railroad companies the duty as to streets that it did as to highways, to construct and maintain convenient crossings. The Court there defined "highway" as a generic term for all kinds of public ways over land or water, and, as used in Code 1930, Section 6127, requiring a railroad constructing tracks across highways to construct and maintain convenient crossings, is limited to public ways over land. One would have difficulty in envisaging such a public crossing maintained in the air. This definition cannot be said to conflict with that of Section 7634, subsection (c) because that section defines a highway as "every public highway," which illumines the meaning of the rest of the subsection, "or place of whatever nature open to the use of the public for purposes of vehicle travel in this State, including the streets and alleys in towns and cities."

The Supreme Court of Alabama in Bellview Cemetery Co. v. McEvers, 174 Ala. 457, 57 So. 375, 376, said: " 'A public highway is one under the control and kept by the public, and must be either established in a regular proceeding for that purpose, or generally used by the public . . . . or dedicated by the owner of the soil.' " See the definition of a final highway in State Highway Commission v. M. M. McGowan, District Attorney, ex rel. Hinds County, 198 Miss. 853, 23 So. (2d) 893. Nowhere in the statutes has our Legislature made any definition of highway identifiable explicitly with air travel, and it would, in our opinion, require a strained interpretation to expand this statutory definition of highway as embracing airways, or to make operation upon a highway identical with flight in the air.

We have discussed the power of the Public Service Commission with a view of determining whether or not the control of aeronautical common carriers has been confided to them by the Legislature by implication, because the letter of the Attorney General and the position of appellants manifestly rest upon that basis. Appellees, however, contend that even if a construction could be put upon the statutes which could impliedly be construed to include within the powers of the Public Service Commission control of common carriers by air this would be insufficient to confer upon the Commission such powers as, under well-recognized rules of law, such powers must be expressly conferred. Appellants in support of their position quote Gulf & S. I. R. Co. v. Laurel Oil & Fertilizer Co., 172 Miss. 630, 158 So. 778, 783, 159 So. 838, 160 So. 564: "While the Railroad Commission has only the powers conferred upon it by statute, yet those powers, when conferred by statute, are to be given a liberal ininterpretation. In 51 C. J., p. 32, sec. 71, it is said that: 'A constitutional provision authorizing the legislature to create a public utility commission is merely a declaration or recognition of the legislature's inherent authority, and not a grant or limitation of power, and so the rule

of exclusion of things not expressed does not apply. Statutes creating or empowering public utility commissions, being essentially remedial in their nature, must be considered in the light of the purpose for which they were enacted, and are to be liberally construed to accomplish their end.' '' ·

The appellees contend that the Commission has no implied powers other than those incidental powers necessarily incident to the powers expressly granted. They cite People ex rel. Public Service Interstate Transportation Co., Inc., v. Public Service Commission et al., 262 N. Y. 39, 186 N. E. 195, wherein the second headnote reads: "Public Service Commission possesses no implied power." In support of this declaration of the law, appellees cite decisions from many states, some of which are that the department of public service of the State of Washington is a creature of statute, and its powers, duties and jurisdiction are limited to what the statute prescribes: State ex rel. Northeast Transp. Co. v. Schaaf, 198 Wash. 52, 86 P. (2d) 1112. A public service commission is a body of limited jurisdiction and has only such powers as are expressly conferred upon it by the statutes and powers reasonably incidental thereto; State ex rel. and to Use of Kansas City Power & Light Co. v. Buzard, 350 Mo. 763, 168 S. W. (2d) 1044. Where a statute confers specific powers on a tribunal, board or commission with limited powers, such as Public Service Commission, its powers are limited to those specifically mentioned in statute; Union Pacific R. Co. v. Public Service Commission, 103 Utah 186, 134 P. (2d) 469. To the same effect are cited court decisions from South Carolina, Texas, Colorado, Vermont, Wisconsin, Iowa, Maryland, Ohio and New York. Our Court said: "The Railroad Commission has no implied power." Illinois Cent. R. Co. v. Mississippi R. Comm., 143 Miss. 805, 109 So. 868, 869; Gulf & S. I. R. Co. v. Mississippi R. Com., 94 Miss. 124, 134, 49 So. 118.

The general rule is laid down in 37 Am. Jur. 537, sec. 24, "The Commission should not assume jurisdiction over motor transportation unless it clearly appears by the language of the statute that it has such jurisdiction." Our Court, in discussing the old railroad commission, held that a "Railroad Commission derives its power to act from the legislative authority conferred upon it." Mississippi Railroad Comm. et al. v. Gulf, M. & N. R. Co., et al., 170 Miss. 724, 155 So. 212, 213. In Gulf and Ship Island R. Co. v. Mississippi Railroad Comm., 94 Miss. 124, 49 So. 118, we said: "While general power is given to the commission to do many things, however, in each instance it will be found that the power is specifically granted."

To summarize, we have reached the conclusion that a motor driven airplane is a motor vehicle; and that motor driven airplanes are capable of operating as common carriers, as the term "common carriers" is defined. However, we are further of the opinion that highways, as meant by our statutes under review, are public roads or city or town streets and alleys on the ground. There are air routes but no air highways, in our judgment, such as are dealt with in the powers conferred upon the Public Service Commission. Since Title 28 of the Code of 1942, insofar as it deals with common carriers, confers on the Public Service Commission power to regulate common carriers by land and water only, in addition to what we have already said supra, we are of the opinion that no implied powers have been conferred on the Commission to supervise aeronautical common carriers, even if such powers could be conferred by implication. This, we think, the Legislature may not do. At any rate, they have not done so in this instance. Neither have they done so expressly.

Surely it cannot convincingly be argued that subsection (c) expressly confers on the Commission power to control airplane common carriers, or that the Commission has acquired it by evolution, with the right to permit

helter-skelter navigation of the atmosphere, contrary to every other conception of a highway, not as boundless space, but as a defined route. The whole subsection (and it must be read as a whole and in its relation to other sections and statutes) manifestly embraces only surface travel, since it says a highway is ''every public highway or place of whatever nature open to the use of the public for purposes of vehicle travel in this State, including the streets and alleys in towns and cities.'' So far, there are no streets or alleys in the sky! Appellants do not argue that progress of events since the enactment of the legislation has brought upon the Commission the power and authority not intended by the Legislature for it to have at the time of its passage. They rely on implied powers— but such power must be expressed, as this Court has repeatedly said as to powers of commissions,—neither implied nor conferred by subsequent developments, but only by the expressed intent of the Legislature. The letter from the office of the Attorney General, on which appellants rely, contains this conclusion: ''I would suggest that the attention of the Legislature be called to the lack of specific authority for the Mississippi Public Service Commission to act on applications for intrastate transportation by aircraft.'' In our judgment, the jurisdiction has not yet been granted the Public Service Commission to control traffic by air transportation.

There is nothing in our statutes wherein regulation of airplanes as common carriers can be made to fit. Certainly, any public service commission to whom such regulations were committed would be required to follow rules dealing with landing fields, runways, control towers, beams, hangars, radio communications, clearances, types, sizes and capacity of planes, restrictions on safety of flights by ceilings, qualifications of pilots, and other matters pertaining peculiarly to airplane operations. These and many other essentials and incidents of aeronautical operations do not fit existing legislation regulating facilities and operation of common carriers by land and water

even where motor driven. Only over such common carriers has jurisdiction been expressly committed to the Public Service Commission by the Legislature, the sole source of its powers.

It follows, therefore, that the trial court was correct in holding that the Public Service Commission had no jurisdiction over these applications and in dismissing the same in this case, provided appellees were possessed of the right to contest the applications. Appellants contend that appellees have no such interest in the subject matter of the litigation as qualifies them to contest the granting of the certificates sought, on the ground that they have not been and could not be injured by the action of the Public Service Commission in granting the franchises requested by appellants. They cite Flournoy v. Smith, 3 How. 62, 4 Miss. 62, wherein it was held that any person whose interests are affected by a judgment, may prosecute a writ of error. They also cite Dougherty v. Compton, 3 Smedes & M. 100, 11 Miss. 100; Hamilton v. Moore, 32 Miss. 205. In answer thereto, the appellees cite Sections 7683 and 7699, Code 1942, providing that in addition to other remedies now available the State, or any party aggrieved by any final order or judgment of the Commission, shall have the right of appeal to the First Judicial District, Circuit Court of Hinds County. They cite also Deberry v. President, etc., of Town of Holly Springs, 35 Miss. 385, dealing with appeals from municipal authorities, to the effect that it is unnecessary that the appellant be a party to the record and that he could show by evidence apart from the proceedings in the supervisor's court that he had an interest. Wilson v. Wallace, 64 Miss. 13, 8 So. 128, where it is held that any taxpayer may appeal from a decision allowing a claim against the county. Also Ferguson v. Board of Sup'rs of Monroe County, 71 Miss. 524, 14 So. 81.

It is pointed out by appellants that the Chicago & Southern Airlines operate from New Orleans via Jackson, Greenwood, Memphis, St. Louis, to Chicago and return.

It has landings or airport facilities at Jackson and Greenwood. The Delta Airways Corporation operates east and west through the State of Mississippi. The Illinois Central Railroad Company and its affiliates, the Yazoo & Miss. Valley Railroad Company and the Gulf & Ship Island Railroad Company, have a network of rail operations in the State of Mississippi for the transportation of passengers and freight. It is argued that such surface operators by rail are deeply interested in the question of competition with any other form of common carriers, including aircraft, and that the national airlines stand ready, willing and able to supply additional needed service by aircraft, and are hence also directly interested in the matter as competitors. After having very carefully considered the arguments on both sides, we are of the opinion that appellees were qualified to protest and that the trial court was correct in so finding.

As said in Curtiss-Wright Flying Service, Inc., v. Glose, supra, the parties hereto ''All alike perform the same service, viz., transportation. They are competitors for the same class of business. Every passenger carried by airplane means a passenger less for the railroad or steamship.'' The appellants here include some railroads. Laying aside other qualifying conditions, averting the hazards of prospective competition, with attendant division of business, contest for customers, and struggle for survival, vest appellees with the right to protest.

Since we find no error in the record, we must and do affirm the judgment of the lower court.

Affirmed.